IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**JERALD FRANCIS GRAY,**<br><br>*Defendant/Appellant* | **REDACTED, PUBLIC VERSION**<br><br>**Appeal No: 22-4060**<br><br>**District Court Case No: 7:22-cr-1-TTC-RSB** |

## MEMORANDUM RESPONSE BRIEF OF THE UNITED STATES

The United States of America respectfully files this Memorandum Response Brief, opposing the defendant's attempt at pretrial release. Defendant Jerald Gray is pending trial on a charge of possessing child pornography depicting a minor under 12. The evidence at the detention hearing concerning the nature and circumstances of the offense, Gray's prior sexual abuse of two minors, and criminal and substance abuse history, demonstrated by clear and convincing evidence that Gray is a danger to his community and should remain detained pending trial. Accordingly, this Court should affirm the district court's order of detention.

## JURISDICTIONAL STATEMENT

Gray has been charged by a federal grand jury with one count of possessing one or more visual depictions of a minor under 12 engaged in sexually explicit conduct. Dkt. No. 27. His trial is currently set for June 8, 2022.

The statute governing original jurisdiction in federal criminal matters, 18 U.S.C. § 3231, conferred jurisdiction on the district court. On January 21, 2022, the district court denied revision of the magistrate judge's detention order. The notice of appeal was filed on January 27, 2022. Dkt. No. 36. The appeal was therefore timely under Federal Rule of Appellate Procedure 4(b)(1)(A)(i). This Court has jurisdiction of this appeal under 28 U.S.C. § 1291. *See* 18 U.S.C. § 3145(c).

## ISSUE PRESENTED

Whether the district court clearly erred by finding the government proved by clear and convincing evidence that Gray was a danger to the community and there were no terms that could reasonably assure a safe pretrial release, in light of the strength of the evidence against Gray, the nature and circumstances of the offense, and his willingness to act on his sexual predilection for children, including through admitted prior instances of sexually molesting two children.

## STANDARD OF REVIEW

"Although the district court review of a magistrate's detention order is *de novo*, [this Court's] review of the final detention order of the district court is under a clearly erroneous standard." *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989) (citing *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985)); *see also United States v. Abuhamra*, 389 F.3d 309, 317 (2d Cir. 2004) (applying a clear error standard to review of district judge's detention order and noting that "[t]his clear

2

error standard applies not only to the court's specific predicate factual findings but also to its overall assessment, based on those predicate facts, as to the risk of flight or danger presented by defendant's release"). When considering the defendant's interlocutory appeal of the district court's detention order, *see* 18 U.S.C. § 3145(c), this Court must consider "whether the evidence as a whole supports the conclusions of the proceedings below." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (citing *United States v. Trosper*, 809 F.2d 1107, 1111 (5th Cir. 1987)). In so doing, this Court must afford "'deference to the determination of the district court.'" *Id.* (citation omitted). However, if the district court applied the wrong legal standard, the usual deference is not afforded to the district court and this Court may review its detention determination *de novo*. *United States v. Simms*, 128 F. App'x 314 (4th Cir. 2005) (citing *Consolidation Coal Co. v. Local 1643*, 48 F.3d 125, 128 (4th Cir. 1995)).

## STATEMENT OF THE CASE

On December 16, 2021, a federal magistrate judge issued a criminal complaint for Gray's arrest for possessing child pornography in violation of 18 U.S.C. §2252(a)(4). Dkt. No. 1. Gray was arrested that day and a detention hearing was held on December 17, 2021. Dkt. No. 8.

At the detention hearing, Special Agent Lynne Witt of the Federal Bureau of Investigation (FBI) testified for the government. Special Agent Witt stated the FBI

became aware of an IP address requesting images of child sexual abuse material over a peer-to-peer network, and that Gray was linked to that IP address. App'x at 12. The IP address was further linked to a residence owned by Gray where he resided with his adult daughter and two minor grandchildren. App'x at 12-13. The two minors residing at the residence with Gray were approximately seven and eight years old. Both minors are female. App'x at 13, 28.

The FBI secured a search warrant for the residence and, upon its execution, saw a computer with a folder named for the same peer-to-peer network relevant to the initiation of the investigation. App'x at 13-14. On that computer was a "downloads" folder containing approximately 60 video files, and the names of these files were indicative of child sexual abuse material. App'x at 13-14. Several of the files in the folder were reviewed by Agent Witt and were determined to be videos involving the use of a minor who had not attained 12 years of age engaging in sexually explicit conduct. App'x at 14-15, 19.

In a consensual interview, Gray admitted the computer containing the child pornography was in his bedroom and was for his personal use. App'x at 13. Gray also admitted to downloading files from the peer-to-peer network that was the subject of the initial investigation, and he admitted that some of the files he downloaded appeared to him to be child pornography or child sexual abuse material. App'x at 15.

4

After the first interview, Gray consented to a second interview after a polygraph examination. App'x at 16. During that second interview, Gray admitted to having kissed the breasts of a then-12-year-old spending the night in his house in 2005, and also to touching her buttocks. App'x at 16-17, 19. Gray also admitted to touching the breasts of av minor babysitter who worked at his house prior to 2005. App'x at 18. Finally, Gray also indicated he had a sexual attraction to minors. App'x at 18.

The government requested detention on the basis that Gray admitted to engaging in "hands-on" sexual abuse of at least two minors. At the time of the original bond hearing on December 17, 2021, Gray was unable to present a home plan that did not involve living with his minor grandchildren. App'x at 45-49. The Court therefore ordered that Gray be detained, but allowed him to present a home plan and have detention reconsidered without filing a motion. App'x at 49.

On December 29, 2021, Gray, through counsel, submitted to the magistrate judge by email a home plan for Mr. Gray to reside at a hotel in Covington, Virginia. App'x at 70-71. The Court found that "the proposed plan does not reasonably assure the safety of the community given the nature of the present offense alleged and the admissions to federal law enforcement officers regarding past contact offenses. The request for release to the proposed home plan is denied." App'x at 55.

On January 3, 2022, the Defendant requested the district judge review the

5

detention order. App'x at 56-57. The judge did so and issued a memorandum opinion on January 21, 2022. App'x at 64-69. In a six-page opinion, the court wrote it "concludes, based on clear and convincing evidence, that there are no conditions of release that 'will reasonably assure … the safety of any other person and the community ….'" App'x at 64.

On January 13, 2022, Gray was charged by the grand jury in a one-count Indictment with possession of child pornography in violation of 18 U.S.C. §2252(a)(4). Dkt. No. 27.

## ARGUMENT

Gray primarily seeks application of a different standard of review than the clear-error one this Court has said applies, twice in published opinions. Clear error review thus governs this appeal. On the merits, and under any standard of review, the detention order should stand.

### I. A Detention Order Is Subject to Highly Deferential Review, Under Both Circuit Precedent and a Proper Reading of the Bail Reform Act's Text.

As Gray admits, Br. at 7–8, Fourth Circuit precedent has long established that a detention order is reviewed on appeal for clear error. This Circuit first articulated that standard in *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985). Four years later, the Court sitting *en banc* re-affirmed the clear-error standard for detention orders. And it did so in a case, like this one, where the magistrate and district judges both found clear and convincing evidence that conditions would not

6

reasonably assure the safety of others and the community. *United States v. Clark*, 865 F.2d 1433, 1437–38 (4th Cir. 1989) (*en banc*).[1]

It is axiomatic that a panel cannot overrule a prior published panel (or en banc) decision. *See McMellon v. United States*, 387 F.3d 329, 332–33 (4th Cir. 2004). Accordingly, the standard of review applicable to this bail appeal is settled: To prevail, Gray must show that the order below was clearly erroneous, which is a deferential standard. The Court therefore need not dwell on the matter further.

Even if considered from first principles, though, the Bail Reform Act's terms call out for deferential appellate review. In passing the Act, Congress crafted language imbued with fact-intensive, on-the-ground determinations by those who are most familiar with the case, the evidence, the defendant, and the affected community—local trial judges. Plenary appellate review of the kind Gray invites does not comport with the Act's textually-mandated tasks.

Trial judges must consider the "nature and circumstances of the offense" after hearing the evidence. 18 U.S.C. § 3142(g)(1). Sitting as fact-finders, they "weigh" the strength of that evidence. *Id.* § 3142(g)(2). They evaluate the defendant's "history and characteristics," including his "character" and his "physical and mental

---

[1] At least four subsequent unpublished decisions have applied the clear-error standard. Br. at 8 (citing three cases); *United States v. Singh*, 860 F. App'x 283, 283 (4th Cir. 2021) (stating "district court's order denying release on bail is reviewed for clear error" (citing *Clark*)); *accord United States v. Colombo*, 777 F.2d 96, 100 (2d Cir. 1985).

condition"—attributes that are fact-bound, often elusive, and can turn on subtleties and observations, such as demeanor, not apparent from a cold record. *Id*. § 3142(g)(3). And judges assess the "nature and seriousness of the danger" posed to the specific "community" in which they sit and with which they are personally familiar. *Id*. § 3142(g)(4). Trial courts must then balance these fact-laden matters to decide whether conditions could reasonably assure the safety of their "community" or of other people. *Id*. § 3142(e)(1).

Congress's emphasis on danger to the affected "community" was not accidental. As this Court has recognized, in the wake of crimes committed by those on pretrial release, Congress gave courts "increased authority" for detention by *specifically adding* danger to the community as a basis for detention.

> The Bail Reform Act of 1984 ("the 1984 Act") marks a major revision in the standards and procedures governing bail. In response to the "alarming problem" of crimes committed by persons on release, Congress has given the federal judiciary increased authority to withhold bail. Previously, under the Bail Reform Act of 1966, the exclusive consideration in setting bail was whether the defendant would appear at trial. Now, federal courts have been accorded the power to weigh the risk to the community posed by a defendant's release pending trial.

*Williams*, 753 F.2d at 332 (cleaned up).

The heightened focus on impacts to local communities is an especially strong indication that bail determinations by local judges—especially those premised on dangerousness determinations and findings about the possible effects on the community—ought not to be lightly second-guessed. This Court's jurisdictional

8

territory covers millions of people across five states, each of which further contain varied cultural norms and mores, physical features, demographics, and socioeconomic profiles depending on the specific community at issue. The nature of the "community" potentially endangered by a defendant's release (and sometimes even the character or degree of the danger vis-à-vis that community) differs widely from Bethesda, Maryland, to Big Stone Gap, Virginia, to Myrtle Beach, South Carolina. Trial judges who live and work in those communities are thus best situated to know and assess such matters.[2]

A defendant must be charged within a specific district where he committed his crimes, U.S. Const. amend. VI; Fed. R. Crim. P. 18, with some district courts (like the one here) further specifying the particular division, with still further preference given to the division where a defendant lives. W.D. Va. Local Gen. R.

---

[2] Consider a felon in open possession of a rifle. Such possession may be viewed as highly dangerous in one community, but less so in another. Some of that may be the risk attendant to discharge—*i.e.*, the likelihood someone may be shot if the gun goes off in a rural versus urban area. But some of the distinction is based on how the community *itself* perceives the act, whether the defendant appeared *attuned* to those communal perceptions, and what his lack of attention *to those norms* suggests about his character, judgment, and dangerousness. One could reasonably conclude someone with a gun at a Charlottesville supermarket is contravening local social mores (perhaps even intentionally and provocatively so), whereas the same person doing the same thing in Big Stone Gap is not. *See* NPR, Sandy Hausman, *Unconcealed Guns Gan Unsettle, But They're Often Legal* (Jan. 30, 2013), https://www.npr.org/2013/01/30/170652470/unconcealed-guns-can-unsettle-but-theyre-often-legal (last visited Feb. 10, 2022) (describing panicked reaction to open carry in Charlottesville store; contrasting views from surrounding rural areas). Trial courts are best situated to know, evaluate, and weigh such communal subtleties.

2(c). This closely tracks the Act's use of the word "community," which is a group of people "residing in the same locality and under the same government," or "who live in the same area (such as a city, town, or neighborhood)."[3]

In sum, a one-size-fits-all approach—a regime Gary envisions, where appellate judges scattered across the mid-Atlantic regularly exercise (usually under accelerated briefing) *de novo* review over the fact-intensive balancing of the evidence, its strength, a defendant's nature, and his risk to a discrete and unique community—cannot be squared with the text of the Act.

Relatedly, deferential review comports with the respective institutional expertise of the trial and appellate courts. This Court endeavors not to "overstep[ its] role as a court of review, not first view." *United States v. Singletary*, 984 F.3d 341, 347 (4th Cir. 2021). Concomitantly, it affords significant deference (and thus applies less-demanding standards of review like clear error or abuse of discretion) to lower court determinations that are evidence-intensive, circumstance-specific, or otherwise heavily depend on the facts on the ground. *E.g.*, *United States v. Pulley*, 987 F.3d 370, 377 (4th Cir. 2021) (clear error review for judge's determination of recklessness in *Franks* hearing); *United States v. Strieper*, 666 F.3d 288, 292 (4th Cir. 2012) (abuse of discretion standard for substantive reasonableness of sentence

---

[3] Webster's II New Riverside University Dictionary; Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/community (last visited Feb. 10, 2022).

based on balancing § 3553(a)); *United States v. Webb*, 5 F.4th 495, 499 (4th Cir. 2021) (recognizing "broad discretion" of district courts in overseeing discovery); *United States v. Moussaoui*, 591 F.3d 263, 295 (4th Cir. 2010) (according "deference to the trial court's decision as to how best to conducted" a Rule 11 plea colloquy). A bail determination in one such issue.

To the extent one consults statutory and legislative history, *see* Br. 14, it cuts against Gray. As explained above, the Act was passed in "response to the 'alarming problem' of crimes committed by persons on release," whereby "Congress has given the federal judiciary *increased* authority to *withhold* bail" by adding "the power to weigh the risk to the community posed by a defendant's release pending trial." *Williams*, 753 F.2d at 332 (quoting Senate Report) (emphasis added).

Gray further urges a particularized *de novo* assessment of his dangerousness because, he claims, that is "a legal conclusion that does not warrant deference." Br. at 17. He cites nothing to support that radical proposition. Circuit law is instead the opposite. Assessments of dangerousness are issues of fact. *Jenkins v. Harvey*, 634 F.2d 130, 131 (4th Cir. 1980) (stating petitioner's "possible danger to the community were he admitted to bail" was "factual question"); *United States v. Taoufik*, 811 F. App'x 835, 840–41 (4th Cir. 2020) (reviewing for clear error as question of fact whether object—including defendant's body parts—was a "dangerous weapon"; surveying published cases); *United States v. Sturgis*, 48 F.3d 784, 788 (4th Cir.

11

1995); *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 763 (4th Cir. 2021) (dangerousness of condition was material fact precluding summary judgment); *City of Baltimore v. Maryland*, 166 F. 641, 647 (4th Cir. 1908) ("Whether the excavation in this case was dangerous…w[as a] question of fact").[4]

Finally, the clear error standard of review does not mean no review. If there is a firm and definite impression that the district court was wrong, then its order will not stand. *See Easley v. Cromartie*, 532 U.S. 234, 235 (2001) (articulating standard). Further, if the district court employed the incorrect legal standard, its detention order is then reviewed *de novo*, taking the facts as found below. *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005). Simply because an issue is subject to something less than *de novo* review does not, as Gray seems to assume, mean review is somehow not "actual[ly] availabl[e]" or "meaningful." Br. at 16.

## II.  Under Any Standard, Detention Here Was Proper.

Turning to Gray, the detention order was appropriate under any standard of review. The evidence (including Gray's own inculpatory statements) firmly established he committed the child pornography offense—specifically, possessing videos of sexually explicit conduct of children 11 or younger—for which he was

---

[4]  *Accord United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987) ("Whether the release of a particular individual will pose a danger to the community is a question of fact to be determined by the judicial officer following the detention hearing….").

12

charged. Moreover, the undisputed evidence, largely based on Gray's own admissions, was that Gray had prior direct sexual contact with two separate underaged children on three separate occasions: once kissing a 12-year-old's breasts; later touching her buttocks; and on another instance touching the breasts of an underage babysitter. Further, Gray admitted he was sexually attracted to underage females, an attraction his conduct revealed he was willing to act upon throughout his life by both child molestation and obtaining child pornography.

Gray's criminal and substance abuse history also did not help him. Forty-nine years old at the time of the instant offense, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Sealed App'x at 5. ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id*. Further, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Sealed App'x 4.[5] Particularly in light of his admitted sexual abuse of children, these additional aspects of Gray's history and characteristic indicated an individual who at various points in life has struggled to comply with the law. Nor was a home plan that baldly called for living in a hotel sufficient to assure the safety of the community. If anything, the transient nature of

---

[5] Gray's adult daughter, with whom he lived, had been charged with possession of a Schedule I or II drug a few months before Gray's arrest. App'x at 31; Sealed App'x at 2–3.

13

hotels would *heighten* the danger posed by Gray, by providing a rotating menu of potential victims who may lack strong ties to the community or may be harder to find if victimized. *See* App'x 69.

In short, the nature of this offense is a serious one, carrying up to 20 years imprisonment. App'x 67–68. The weight of the evidence showing Gray's guilt is strong, and no one has suggested otherwise. Gray's history and characteristics revealed someone of poor character, who repeatedly engaged in child molestation, who remained sexually attacked to children and recently had acted on that desire in committing the instance offense, who possessed a non-trivial criminal history involving two crimes of deceit, and who had substance abuse issues. The nature and seriousness of his danger to the community was both real and significant. His pre-trial detention was proper.

To resist this conclusion, Gray strips aspects of his history and conduct from the broader picture in order to isolate and minimize them. His efforts, however, are unavailing.

### A.   Strength of the evidence is not a disfavored factor and has special relevance here as to dangerousness.

Recognizing how much it cuts against him, Gray asserts the weight of the evidence "is the least important" statutory factor. Br. at 18–19. While he may wish it were so, that is not the statute Congress wrote. Nothing in the text of § 3142(g) singles out any factor for minimization, much less the weight-of-the-evidence one.

14

Indeed, the strength of the evidence showing Gray's possession of child pornography is particularly significant here because it proves an instance of exactly what makes Gray dangerous to the community: His willingness to act on his sexual attraction to children.

Gray cites only one case, from the Ninth Circuit, suggesting the weight-of-the-evidence factor should be categorically discounted. But that outlier approach has been thoroughly and thoughtfully discredited by *United States v. Calabrese*, 436 F. Supp. 2d 925, 927 & n.3 (N.D. Ill. 2006), based on the reasons above and others.

- "The statute does not instruct that one or another factor is less important."

- "The weight of the evidence is [] relevant to the question of whether detention is justified by the need to protect the community. . . . Were there very strong evidence that a defendant was a serial rapist or killer, this factor alone might outweigh all other factors in determining whether detention is required to protect the community."

- There is no "support for minimizing the 'weight of the evidence' factor in [Fourth] Circuit cases."

- The Ninth Circuit's principle is "an off-key but well-intentioned attempt to remind us of the rule that detention is not to be ordered simply because we are convinced that the accused is guilty."

*See id.* [6]  In short, the strength of the evidence is not a disfavored § 3142(g) factor, and, in this instance, it is an especially salient one.

---

[6]  The second and fourth of these points answer Gray's citation to 2018 statistics about the ultimate likelihood of conviction. Gray wrongly reads the strength-of-evidence inquiry as but a bald (and by his lights, inexact) indicator of whether a defendant will be convicted. But part of the inquiry's point is to inform

15

### B. The nature and circumstances of the offense are serious, especially in light of other factors and the nature of Gray's dangerousness.

Next, Gray minimizes the seriousness of his offense by observing what crimes he is not charged with. In his view, possessing child pornography was not *too* awful because, well, at least he did not distribute it. Br. at 19. His possessing child pornography, he maintains, is not *that* alarming because, after all, such materials are not too hard to find, and he did not have thousands of images. Br. at 19–20.

In short, Gray applauds himself for being less bad than the worst. That is hardly a ringing endorsement, and the focus is on what evidence "*is* in the record rather than on what other evidence there *could be*." *United States v. Seigler*, 990 F.3d 331, 338 (4th Cir. 2021) (emphasis in original) (addressing sufficiency of evidence). On this record, being a thrice-admitted child molester who remains sexually attracted to children *does* enhance both the seriousness of possessing child pornography and one's danger to the community.

To the extent Gray truly contends the court failed to consider the nature of his offense, the argument is frivolous. Both the magistrate judge and district judge were well aware of how many images Gray possessed and that he was not charged with production or distribution. App'x 7, 14, 64–65. Further, Gray did not advance below

---

dangerousness assessments. Further, statistics from 2018 would have little to do with what Congress had in mind when it passed the Act in 1984.

16

the I'm-not-that-bad-because-I-could-have-been-worse argument he now fashions on appeal. *See* App'x at 36–39, 42–44, 47–48, 56–57.

### C. The district court rightly did not ignore Gray's confessed child molestation.

Gray next argues the district should have discounted his confessions to three prior instances of child molestation because there were not close in time to the instant offense. Br. at 21. Accounting for that admitted conduct was not only permissible, it was required by § 3142(g)'s mandate to consider Gray's "character," "history," "characteristics," "past conduct," and dangerousness. And at least here, the timespan of the acts cuts *against* Gray, as it revealed his longstanding willingness (of which the instant offense is but the most recent example) to illegally act on his sexual attraction to children.[7] Finally, Gray's statement (Br. at 23) that "motive for criminal behavior is not a factor that the court may consider" is incredible, as motive (and willingness to act on the motive) clearly goes to dangerousness, character, and characteristics in § 3142(g)(3)(A), (4).

---

[7] Gray's child-focused masturbation is evidence of his attraction to children. He is not being detained for his masturbatory fantasies. He is being detained because of the clear danger he poses to the community in *acting* on his fantasies and harming the object of them: children.

17

### D. Conditions are insufficient to reasonably ensure the community's safety.

Finally, Gray contends the court below did not consider conditions of release he claims would protect the community. First, the premise that the district court failed to consider conditions is incorrect. *E.g.*, App'x 32–33, 36–39, 42–49, 55, 69. Second, Gray overlooks that ordering him to "not have any contact with children" (Br. at 23) would be, based on his documented readiness to act on his sexual desire for children, a parchment barrier. When Gray committed child molestation three times previously, and when he downloaded child pornography, he (like every citizen) already had a legal obligation not to do those things. But he did them anyway. There was thus little reason to think merely pronouncing that Gray could not be around children would cause him to renounce, or not be overcome by, his desires. Nor would other measures, such as reporting and monitoring, reasonably ensure compliance. It was not error, under any standard, for the lower court to conclude conditions could not "reasonably assure" the safety of minor children in Gray's community.

## CONCLUSION

The district court's order of detention should be affirmed.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

18

/s/ S. Cagle Juhan
S. Cagle Juhan,
D.C. Bar No: 1022935
Assistant United States Attorney
U.S. Attorney's Office
255 W. Main St., Room 130
Charlottesville, Virginia 22902
Cagle.Juhan@usdoj.gov
(434) 293-4283

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2022, I electronically filed the Memorandum Response Brief with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/
S. Cagle Juhan
Assistant United States Attorney