No. 22-4060
_____

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

**UNITED STATES OF AMERICA**,
*Appellee*

v.

**JERALD FRANCIS GRAY**
*Appellant*
_____

On Appeal from the United States District Court
for the Western District of Virginia
Roanoke Division (Hon. Thomas T. Cullen)
_____

**REPLY OF THE APPELLANT**
_____

J‍UVAL O. S‍COTT
Federal Public Defender
  for the Western District of Virginia

**Benjamin Schiffelbein**
Assistant Federal Public Defender
210 First Street SW, Ste. 400
Roanoke, VA 24011
(540)777-0880
Counsel of record

*Counsel for Appellant*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

ARGUMENT ........................................................................................................... 1

     This Court need not overrule precedent to determine it should independently review the District Court's legal conclusions……………………………………….2

     The Government would throw out equal protection of the law in the name of giving deference to local judge's views of community whims…………………………4

     The weight of the evidence is logically the least important consideration when the court is concerned about a defendant's future dangerousness……………………..5

     Mr. Gray neither minimizes nor discounts his charged conduct or his past by asking the court to consider mitigating circumstances………………………………...7

     Conditions of release can reasonably assure the safety of the community………9

CONCLUSION ....................................................................................................... 9

CERTIFICATE OF COMPLIANCE ............................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bolling v. Sharpe*,
  347 U.S. 497 (1954) ................................................................................ 5

*In re Bateman*,
  515 F.3d 272 (4th Cir. 2008) ................................................................... 3

*McMellon v. United States*,
  387 F.3d 329 ............................................................................................ 3

*O'Dell v. Netherland*,
  95 F.3d 1214 (4th Cir. 1996) ................................................................... 3

*Pittson Co. v. United States*,
  199 F.3d 694 (4th Cir. 1999) ................................................................ 2,3

*Trump v. Thompson*,
  142 S. Ct. 680 (2022) .............................................................................. 3

*United States v. Calabrese*,
  436 F. Supp. 2d 925 (N.D. Ill. 2006) ...................................................... 6

*United States v. Clark*,
  865 F.2d 1433 (4th Cir. 1989) (en banc ................................................. 2

*United States v. Crawley*,
  837 F.2d 291 (7th Cir. 1988) ................................................................... 2

*United States v. Hurtado*,
  779 F.2d 1467 (11th Cir. 1985) ............................................................... 3

*United States v. Lopez*,
  514 U.S. 549 (1995) ................................................................................ 5

*United States v. Morrison*,
  529 U.S. 598 (2000) ................................................................................ 5

*United States v. Shakur*,
   817 F.2d 189 (2nd Cir. 1987) ................................................................................ 4

*United States v. Williams*,
   753 F.2d 329 (4th Cir. 1985) ................................................................................ 2

**Statutes**

18 U.S.C. 1342(f) ........................................................................................................ 7

18 U.S.C.§ 3142(f)(1) ................................................................................................. 6

18 U.S.C. §1342(g) ..................................................................................................... 4

18 U.S.C.3142(g)(1) & (2) ......................................................................................... 6

18 U.S.C. § 3147(b) (1966) ........................................................................................ 3

## ARGUMENT

This case presents two questions: 1) what standard of review this court should apply in reviewing district court bail decisions; and 2) whether conditions of release can reasonably assure the safety of the community and Mr. Gray's release. The government relies on dicta to assert that this court should only review the district court's bail decision for clear error. The opinions cited by the government, and repeatedly cited in unpublished opinions in this court, do not analyze the issue or provide any reasoning in support of their claim that clear error review should apply. Nor does the government address the weight of authority against reviewing bail decisions under that standard. And in support of deference to district judges, the government relies on a novel theory that would obliterate a defendant's right to equal protection of the law in favor of the vicissitudes of local community values.

The government's claim that Mr. Gray cannot be released while reasonably assuring the safety of the community misconstrues Mr. Gray's arguments. He neither minimizes his conduct nor asks the court to discount any factor. Instead, Mr. Gray argues the District Court erred by relying too heavily on less important factors and by not considering the full nature and circumstances surrounding Mr. Gray's charges and his history. The government repeated the District Court's errors. Each factor that supports detention is significantly mitigated and any remaining concerns about future danger to the community can adequately be addressed by conditions of release.

**This Court need not overrule precedent to determine it should independently review the District Court's legal conclusions.**

Applying *de novo* review to pre-trial bail determinations does not require this Court to overturn any prior case. The two cases that the Government claims must be overruled are *United States v. Williams*, 753 F.2d 329 (4th Cir. 1985), and *United States v. Clark*, 865 F.2d 1433 (4th Cir. 1989) (en banc).[1] As explained in the appellant's Brief, the *Williams* Court merely assumed, without justification or analysis, that clear error review was appropriate. *See* Br. at 12–14; *Williams*, 753 F.2d at 333. And *Clark* did not "re-affirm[ ] the clear error standard." *See* Mem. Resp. Br. At 6. *Clark* simply cited *Williams*' assumption that clear error review applied without discussing it or seeming to realize that *Williams* never addressed the issue. *See Clark*, 865 F.2d at 1437. Rather than analyze *Williams* or *Clark*, the government's brief repeats dicta and argues unconvincingly that it should bind this court.

Dicta is generally considered to be the portions of opinions that could be "deleted without seriously impairing the analytical foundations of the holding" and that "may not have received the full and careful consideration of the court that uttered [them]." *See Pittson Co. v. United States*, 199 F.3d 694, 703 (4th Cir. 1999)

---

[1] The Government also points to several unpublished opinions, *see* Mem. Resp. Br. At 7 n.1. Because these decisions are unpublished and entirely rely on *Williams* and *Clark* they do not alter the calculus. Mr. Gray also cited these cases to illustrate just how often this court has relied without question on *Williams*' assumption. Indeed, much of the government's argument boils down to the familiar dangerous phrase, "but we've always done it that way."

2

(quoting *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (internal quotation marks and citations omitted); *see also Trump v. Thompson*, 142 S. Ct. 680, 681 (2022) (statement of Kavanaugh, J. respecting denial of the petition) (explaining why the D.C. Circuit's dicta "should not be considered binding precedent going forward"); *O'Dell v. Netherland*, 95 F.3d 1214, 1234 (4th Cir. 1996) (characterizing an assertion in a prior Supreme Court case that the decision is "'compelled' by prior caselaw" as "hortatory dicta" that "should not be considered binding"). Both *Clark* and *Williams* questioned only whether the lower court clearly erred in its bond decision, not whether the clear error standard should apply. As such, one could omit those portions without at all "impairing the analytical foundations of the holding." *See Pittson*, 199 F.3d at 703 (citing cases). The government correctly states that "a panel cannot overrule a prior published panel (or en banc) decision." Mem. Resp. Br. at 7 (citing *McMellon v. United States*, 387 F.3d 329, 332–33 (4th Cir. 2004)). It is equally true that dicta does not bind future courts. *See In re Bateman*, 515 F.3d 272, 282 (4th Cir. 2008) (declining to follow "dicta unaccompanied by any analysis from which we might gain insight into the Court's reasoning").

The clear error standard derives from the Bail Reform Act of 1966, not the Bail Reform Act of 1984. *See, e.g.*, *United States v. Hurtado*, 779 F.2d 1467, 1472 (11th Cir. 1985); 18 U.S.C. § 3147(b) (1966) (repealed by the Bail Reform Act of 1984). Instead of analyzing the issue for the first time, the government would have the court rely on

3

old language specifically removed from the statute and two cases that never addressed what standard to apply. This Court should take the opportunity presented in this case to join the majority of circuits by deciding that district court legal conclusions, and conclusions of mixed law and fact, in bail determinations receive *de novo* review.[2]

**The Government would throw out equal protection of the law in the name of giving deference to local judge's views of community whims.**

The bail reform act requires the court to make a particularized assessment of the defendant and impose the least restrictive conditions necessary to assure the appearance of the defendant and the safety of the community. *See* 18 U.S.C. §1342(g). The government misreads the statute to require the court to make a particularized assessment of the community and account for its "cultural norms and mores, physical features, demographics, and socioeconomic profiles." Mem. Resp. Br. at 9. One might wonder how the demographics of a community would be relevant to a bail decision, or if the physical features to which the government refers are of the "[c]ourt's jurisdictional territory" or of the "specific community at issue." Defendants who are charged with the same offenses who have similar bail facts should be treated similarly,

---

[2] Whether conditions of release can reasonably assure the safety of the community is a mixed question of law and fact. *See, e.g.*, *United States v. Shakur*, 817 F.2d 189, 196 (2nd Cir. 1987) ("Congress' use in the statute of the word 'reasonably' makes the existence of 'conditions' . . . in part a question of law"). Mr. Gray also argues that, when the district court merely reviews the same record available to this court, there is no reason to afford deference to the district court's conclusions, including its determination of whether the defendant's release poses a danger. *See* Br. at 17.

4

regardless of where in this circuit they are charged. *See, e.g.*, *Bolling v. Sharpe*, 347 U.S. 497, 498 – 499 (1954). The government's insinuation that a person charged with being a felon in possession of a firearm might reasonably be detained in Charlottesville but not in Big Stone Gap, *based solely on the different community in which the offense occurred*, is contrary to the law and reads like a dog whistle alluding to a time when courts routinely treated defendants differently based on a particular "physical feature[ ]."

The government's focus on local communities is also incongruous with the limited scope of federal criminal law. The federal government is one of limited and enumerated powers. *See, e.g.*, *United States v. Lopez*, 514 U.S. 549, 552 (1995). Indeed, "the regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *See United States v. Morrison*, 529 U.S. 598, 618 (2000). The government's focus on local issues is neither compelled by anything in the text of the Bail Reform Act nor is it supported by general principles of constitutional law. And its focus on treating similarly situated defendants differently based on "varied cultural norms and mores, physical features, demographics, and socioeconomic profiles" is illegal and patently offensive. *See* Mem. Resp. Br. at 9.

**The weight of the evidence is logically the least important consideration when the court is concerned about a defendant's future dangerousness.**

The government correctly points out that the Bail Reform Act does not specifically favor any of the 3142(g) factors. However, the court's ultimate decision is

5

how those factors contribute to whether the court detains or releases a defendant on bond. How does the weight of the government's case inform whether a defendant's release would pose a danger to the community? The government's cited authority, *United States v. Calabrese*, confuses that prong as one that amalgamates "the nature and seriousness of the offense" and the "history and characteristics of the defendant." 436 F. Supp. 2d 925, n.3 (N.D. Ill. 2006). There, the court pondered "[w]ere there very strong evidence that a defendant was a serial rapist or killer, this factor alone might outweigh all other factors . . ." *Id.* Strong evidence that a person may be a "serial rapist" is different than the weight of the evidence against the person in the charged case. Whether a person is a serial rapist is part of his history and characteristics, not a part of the "weight of the evidence against the person." And even convicted serial rapists cannot be detained based on concerns about dangerousness unless they are charged with a crime specified in 18 U.S.C.§ 3142(f)(1).

    Congress specifically directed the courts to look at both the "nature and circumstances of the offense charged" and the "weight of the evidence against the person." *See* 18 U.S.C.3142(g)(1) & (2). The government confuses the two by suggesting that the "strength of the evidence" "proves . . . what makes Gray dangerous to the community." *See* Me. Resp. Br. at 16. The weight of the evidence does not do that; the nature and circumstances of the charged offense does. The fact that the government may have significant evidence of guilt is minimally probative of a

person's danger. Rather, it is what that evidence demonstrates that is probative of a person's potential future dangerousness.

Nor is the "weight of the evidence," as the government suggests, "part of the inquiry[ ] to inform dangerousness assessments." *See* Mem. Rep. Br. at n.6. The facts that the court finds to sustain a finding of unmitigable dangerousness must be shown by "clear and convincing evidence." If the government does not have "clear and convincing evidence" that the person's release would pose a danger to the community, then the court must release the defendant. *See* 18 U.S.C. 1342(f). The weight of the evidence prong only asks the court to consider the evidence against the defendant in the case, not the evidence on which the government relies to prove dangerousness. The government misreads this section by insinuating it informs the burden of proof: it does not.

When the government has strong evidence against a defendant, a defendant might have more reason to flee. Conversely, when the government's evidence is weak, the person would have little reason to skip town to avoid his trial. This prong is directly related to the Court's determination about a defendant's risk of flight, but it has little relationship to the Court's concern about danger.

**Mr. Gray neither minimizes nor discounts his charged conduct or his past by asking the court to consider mitigating circumstances.**

By asking the court to consider that Mr. Gray did not distribute or manufacture CSAM, and that none of the images in his possession were alleged to contain sadistic

7

or masochistic images of abuse of an infant or toddler, Mr. Gray does not "applaud[ ] himself for being less bad than the worst." *See* Mem. Resp. Br. at 16. These circumstances are inherent to the nature and circumstances of the charged offense and are directly relevant to whether Mr. Gray's release would pose an unmitigable danger. Nor does Mr. Gray ask the court to "discount his confessions" by arguing that their age lessens their probative value in showing that his release would pose a current danger to the community. *See* Mem. Resp. Br. at 17. Mr. Gray simply argued that they should receive less weight in the analysis given their age—a principle routinely credited in various aspects of the law. *See* Br. at 21. And the government has not argued otherwise.

These circumstances, inherent in the evidence before the court, significantly mitigate any danger Mr. Gray's release might pose. In fact, they show that any such danger can be mitigated by conditions of release. Old criminal conduct that has not been repeated suggests that it will not be repeated—especially if conditions of release are imposed to limit any opportunity for such conduct. And defendants who are not alleged to have distributed or produced CSAM should be viewed as significantly less dangerous. By arguing that they are irrelevant or aggravating, the government commits the same error as the District Court: weighing too heavily what Mr. Gray is charged with and his criminal conduct without considering the nature or circumstances surrounding the charge or how the dated nature of Mr. Gray's admitted criminal conduct suggests that he is unlikely to repeat it.

8

**Conditions of release can reasonably assure the safety of the community.**

Although the government labels court orders as "parchment barriers," several conditions—including those proposed by pretrial services—can meaningfully mitigate any potential danger Mr. Gray's release might pose. The United States Probation and Pretrial Services system can meaningfully oversee, and help the court to enforce, conditions that the court believes necessary to assure the safety of the community. Indeed, that office regularly supervises people convicted of—not merely accused of—crimes similar to and more serious than the charge against Mr. Gray. Prohibitions on Mr. Gray being around unrelated minors can easily be enforced by electronic monitoring and regular reporting to law enforcement. Prohibitions on his internet use could meaningfully ensure that he not further download or possess CSAM. The District Court did not consider those conditions. The government's argument is essentially that the court cannot trust Mr. Gray to obey conditions because he disobeyed an obligation to obey the law by allegedly committing crimes. But everyone has an obligation to obey the law, and every defendant in federal court is there for alleged having broken the law. The government's argument would result in nearly every defendant being detained, not the limited subset of defendants intended by the Bail Reform Act.

## CONCLUSION

Mr. Gray is not charged with an offense that carries a presumption of detention. He has a stable residence, significant ties to the community, and pretrial

9

services recommended his release and conditions that would ameliorate any concern about future dangerousness. Although he admitted to criminal conduct against minors, the conduct occurred long ago and there is no evidence it was repeated. The District Court erred in concluding that no condition or combination of conditions could assure the safety of the community. This Court should review that decision *de novo* and join the supermajority of her sister circuits. It should not, as the government asks, rely on dicta that is neither persuasive nor the product of reasoned analysis or judgement, to defer to the district court's legal conclusions.

Respectfully submitted,

>Juval O. Scott
>Federal Public Defender
>   for the Western District of Virginia
>
>/s/ Benjamin M. Schiffelbein
>Asst. Federal Public Defender
>NH Bar No. 267593
>210 First Street SW, Room 400
>Roanoke, Virginia 24011
>Ph. (540) 777-0880
>Fax (540) 777-0890
>Benjamin_Schiffelbein@fd.org
>
>/s/ Elena Schiefele
>Third-year law student, legal intern
>Elena_Schiefele@fd.org

**CERTIFICATE OF COMPLIANCE**

I certify that this brief contains 2,535 words exclusive of the table of contents and authorities, cover page, and signature block.

/s/ Benjamin Schiffelbein